STRACHAN v MUTUAL AID AND NEIGHBORHOOD CLUB, INC.

OPINION OF THE COURT

1. JUDGMENT—RES JUDICATA—CONTESTED ISSUE.

Res judicata is a jurisprudential doctrine founded upon the premise that litigation of a controversy must have a termination point; the doctrine becomes applicable when an adjudicatory proceeding on a contested issue has progressed to a final determination and all available courses of appeal have been exhausted or not pursued within the prescribed time limits.

2. JUDGMENT—ADMINISTRATIVE LAW—RES JUDICATA—FINAL JUDGMENT.

Res judicata is applicable to administrative proceedings that are adjudicatory in nature and from which an appeal is provided, where the Legislature intends that the tribunal's judgment is to be final absent an appeal.

3. APPEAL AND ERROR—ADMINISTRATIVE LAW—CIVIL RIGHTS COMMISSION.

A plaintiff who has failed to appeal from a final order of the Civil

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 47 Am Jur 2d, Judgments § 457.

Judgment as res judicata pending appeal or motion for a new trial, or during the time allowed therefor. 9 ALR2d 984.

[3, 12] 2 Am Jur 2d, Administrative Law §§ 551, 552.

[4] 15 Am Jur 2d, Civil Rights §§ 499–513.

Validity and construction of labor legislation prohibiting discrimination on account of age. 29 ALR3d 1407.

[5] 46 Am Jur 2d, Judgments § 404.

[6–10] 46 Am Jur 2d, Judgments §§ 446, 452, 495, 500, 501.

[6–10] Res judicata effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue. 49 ALR2d 1036.

Res judicata as affected by limitation of jurisdiction of court which rendered judgment. 83 ALR2d 977.

Dismissal of civil action for want of prosecution as res judicata. 54 ALR3d 473.

Judicial qualification of provision of Rule 41(b) of Federal Rules of Civil Procedure that dismissal for failure to prosecute or to comply with federal rules or court order, and certain other dismissals operate as adjudication upon merits. 5 ALR Fed 897.

[8, 11] 2 Am Jur 2d, Administrative Law § 595.

Rights Commission is precluded from further litigation of the issues determined by that order.

DISSENT BY P. R. MAHINSKE, J.

4. CIVIL RIGHTS—EMPLOYMENT—AGE DISCRIMINATION—CIVIL RIGHTS COMMISSION—CIRCUIT COURTS—JURISDICTION.

*The right to obtain and retain employment without discrimination on the basis of age is a civil right which is enforceable concurrently before the Civil Rights Commission and in the circuit court.*

5. JUDGMENT—RES JUDICATA—REQUIREMENTS.

*Three requirements must be satisfied in order for a former judgment to be a bar to a subsequent action: (1) identity of subject matter, (2) identity of parties or their privies, and (3) a judgment on the merits.*

6. JUDGMENT—RES JUDICATA—DISMISSAL—LACK OF JURISDICTION— COURT RULES.

*An involuntary dismissal which is not for lack of jurisdiction operates as an adjudication on the merits and bars a plaintiff from bringing a second action unless it is specified that the dismissal is without prejudice; the corollary to this rule is that a dismissal for lack of jurisdiction does not operate as an adjudication on the merits (GCR 1963, 504.2).*

7. JUDGMENT—DISMISSAL—ADMINISTRATIVE LAW—JURISDICTION— COURT RULES.

*The dismissal of a case on the basis of a plaintiff's failure to exhaust his administrative remedies, and not on the merits of the plaintiff's allegations, was a dismissal for "lack of jurisdiction" within the meaning of a court rule governing the effect of an involuntary dismissal upon a subsequent action between the same parties (GCR 1963, 504.2).*

8. ADMINISTRATIVE LAW—EXHAUSTION OF REMEDIES—CIRCUIT COURT —JURISDICTION.

*Failure of a plaintiff to exhaust his administrative remedies deprives a circuit court of subject matter jurisdiction.*

9. JUDGMENT—JURISDICTION—RES JUDICATA.

*A judgment made on the grounds that the court lacks jurisdiction, while not on the merits and not conclusive on the merits, is conclusive as to the jurisdictional question presented and the jurisdictional issue may not be relitigated.*

10. JUDGMENT—JURISDICTION—RES JUDICATA—ERRONEOUS JUDGMENT.

*Generally, a decision of a court that it is without jurisdiction to hear a matter acts as a bar to the bringing of another action even if that decision is erroneous; this rule is, however, subject to exceptions under proper circumstances.*

11. JUDGMENT—RES JUDICATA—ADMINISTRATIVE LAW—EXHAUSTION OF REMEDIES—JURISDICTION—CIRCUMSTANCES.

*A dismissal by a circuit court on the basis that the plaintiff had not exhausted her administrative remedies where she had also filed a complaint to the Civil Rights Commission which had not yet been adjudicated when the plaintiff filed her complaint in circuit court is not res judicata as to a second complaint filed after the commission dismissed the matter where the jurisdictional question and the circumstances were different at the time of filing the second complaint.*

12. ADMINISTRATIVE LAW—REVIEW—CIVIL RIGHTS COMMISSION—EXHAUSTION OF REMEDIES—STATUTES—RULES.

*A final decision or order of the Civil Rights Commission is subject to direct review by the courts; the filing of a motion or application for reconsideration or rehearing is not required prior to seeking a consideration of the matter by a circuit court (MCLA 24.301; MSA 3.560[201], 1970–1971 AACS, R37.7[a], 1967 AACS, R37.18[a]).*

Appeal from Wayne, Peter B. Spivak, J. Submitted June 21, 1977, at Detroit. (Docket No. 31118.) Decided February 6, 1978. Leave to appeal applied for.

Charlotte Strachan filed a complaint with the Michigan Civil Rights Commission alleging that her employment with Mutual Aid and Neighborhood Club, Inc., was wrongfully terminated. While this action was pending, she filed a complaint in circuit court seeking declaratory and injunctive relief for the same alleged unlawful discrimination. The circuit court granted a summary judgment for defendant. The Civil Rights Commission dismissed plaintiff's complaint. Plaintiff did not appeal from that order but instead filed a second complaint in circuit court based upon the same

allegations. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*Haynes & Donnelly, P. C.,* for plaintiff.

*Keller, Thoma, Toppin & Schwarze, P. C.* (by *Michael L. Smith),* for defendant.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

BASHARA, J. Plaintiff appeals a circuit court order granting defendant's motion for an accelerated judgment.

After being discharged from her employment with defendant, plaintiff filed a complaint with the Michigan Civil Rights Commission claiming that her termination constituted an unlawful employment discrimination on account of age and sex. While the proceedings were pending with the commission, plaintiff instituted suit in the circuit court seeking relief for the same alleged unlawful discrimination. This action was dismissed "with prejudice" on defendant's motion for accelerated judgment, which contended that plaintiff failed to first exhaust her administrative remedies before the commission. No appeal of the circuit court's order of dismissal was taken by plaintiff.

Subsequently, the commission dismissed plaintiff's action due to insufficient evidence to sustain the charge. Review of this determination was not pursued by plaintiff. Instead, she filed a second suit in the circuit court. This proceeding was dismissed on defendant's motion for accelerated judgment, which was based on the claim that plaintiff's suit was barred under the doctrine of *res judicata.* Plaintiff thereafter perfected this appeal.

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Resolution of this controversy does not require us to review or pass upon the propriety of the first circuit court order of dismissal. Rather, it is apparent from the proceedings below that plaintiff had an opportunity to completely litigate the merits of her claim before the commission. Having failed to appeal its decision, the plaintiff is barred from collaterally attacking that determination by another proceeding. Accordingly, the order granting defendant's motion is affirmed.

Res judicata is a jurisprudential doctrine founded upon the premise that litigation of a controversy must have a termination point. Otherwise, judicial resources would be unnecessarily expended, and the rights of litigants would be subjected to interminable contest.

The doctrine of res judicata becomes applicable when an adjudicatory proceeding on a contested issue has progressed to a final determination, and all available courses of appeal have been exhausted or not pursued within the prescribed time limitations. Thereafter, that issue becomes settled and may not be relitigated between the same parties in a collateral proceeding, absent some compelling equity not here pertinent. See *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971), *Gursten v Kenney,* 375 Mich 330; 134 NW2d 764 (1965). Further, this doctrine is applicable to administrative proceedings that are adjudicatory in nature and from which an appeal is provided, where the Legislature intends that the tribunal's judgment is to be final absent an appeal. *Senior Accountants, Analysts & Appraisers Assoc v City of Detroit,* 399 Mich 449, 457–458; 249 NW2d 121, 124–125 (1976).

All proceedings initiated by plaintiff had the purpose of seeking relief for an alleged unfair

employment practice, as provided in § 3a[1] of the Michigan State Fair Employment Practices Act, MCLA 423.301 *et seq.;* MSA 17.458(1) *et seq.* Any relief to which the plaintiff could establish legal entitlement was obtainable from the commission pursuant to its legislatively created powers. MCLA 37.5(h); MSA 3.548(5)(h).[2] However, the commission, after hearing witnesses and reviewing other

---

[1] The applicable portion provides as follows:

"It is an unfair employment practice:

(a) For any employer, because any individual is between the ages of 18 and 60, or because of the sex of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment. Any such refusal to hire or discrimination shall not be an unfair employment practice if based on law, regulation, the requirements of any federal or state training or employment program or on a bona fide occupational qualification. It shall not be an unfair employment practice to refuse to select an individual over the age of 35 because of his age for an apprenticeship or an on-the-job training program intended to have a duration of more than 4 months." MCLA 423.303a; MSA 17.458(3a).

It should be noted that at the time of the plaintiff's discharge she was 58 years of age.

[2] Since repealed by 1976 PA 453, effective March 31, 1977.

That section provided that the commission is empowered:

"To hold hearings, administer oaths, issue preliminary notices to witnesses to appear, compel through court authorization the attendance of witnesses and the production for examination of any books, papers or other records relating to matters under investigation or in question before the commission, take the testimony of any person under oath, and issue appropriate orders. The commission may make rules as to the issuance by individual commissioners of preliminary notices to appear."

We construe the term "appropriate orders" to include any monetary recompense to which a complainant may be entitled as a result of the unfair employment practice. Our conclusion is aided in substantial part from insight provided by § 605 of the new Michigan Civil Rights Act, which delineates the permissible scope of commission orders. That section states in pertinent part:

"(2) Action ordered under this section may include, but is not limited to: * * * (i) Payment to the complainant of damages for an injury or loss caused by a violation of this act, including a reasonable attorney's fee." MCLA 37.2605(2)(i); MSA 3.548(605)(2)(i). Additionally, our Supreme Court has held that jurisdiction of actions for violations of the act rests concurrently with the commission and circuit courts and that civil damage remedies may be pursued in the courts "in addition to the remedial machinery provided by statute". *Pompey v General Motors Corp,* 385 Mich 537, 560; 189 NW2d 243, 255 (1971).

evidence, issued an order dismissing plaintiff's complaint; an order from which no appeal was perfected.

MCLA 37.4; MSA 3.548(4) provided as follows:

"The commission shall investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by the constitution of this state, and shall secure the equal protection of such civil rights without such discrimination. A complaint alleging an unlawful discriminatory practice is subject to the same procedure as a complaint alleging an unfair employment practice under Act No. 251 of the Public Acts of 1955, being sections 423.301 to 423.311 of the Compiled Laws of 1948. Appeals from final orders of the commission, *including* cease and desist orders and *refusals to issue complaints,* shall be tried de novo before the circuit court for the county of Ingham, the circuit court for the county wherein the alleged unlawful discriminatory practice is alleged to have occurred or where the person, firm or corporation against whom the complaint was filed, resides or has his principal place of business. If an appeal is not taken within 30 days after the service of an appealable order of the commission, the commission may obtain a decree for the enforcement of the order from the circuit court which would have had jurisdiction of the appeal."[3] (Emphasis added.)

Evident from the language used is a legislative intent that an unappealed order of the commission becomes final. After 30 days from receipt of the commission's order, if no appeal has been taken, enforcement of the order may be obtained merely

---

[3] Notwithstanding the statutory term "tried de novo", this provision has been held to limit review by the circuit courts to an appeal in the nature of certiorari of the record developed from the commission's proceedings. Accordingly, the circuit court's review is limited to ascertaining if the commission's determination is based upon legal error or arbitrary action. *Ross v Taylor Township School Board,* 377 Mich 15; 138 NW2d 402 (1965), *Lesniak v Fair Employment Practices Commission,* 364 Mich 495, 505–506; 111 NW2d 790, 796 (1961).

by showing service of a regularly entered order and the jurisdiction of the commission and circuit court. *Id.*

Accordingly, we conclude that the commission's order of dismissal became final when plaintiff failed to seek review within the prescribed time period. The circuit court order granting an accelerated judgment was a proper resolution of this case, albeit based upon the res judicata effect of a prior circuit court order on which we express no opinion as to propriety. Nevertheless, since the commission's order is final, plaintiff is precluded from further litigation of the issues determined by that order.[4]

Affirmed.

D. C. Riley, P. J., concurred.

P. R. Mahinske, J. *(dissenting).* This case presents questions dealing with the concurrent jurisdiction of the Michigan Civil Rights Commission and the circuit courts, and the application of the doctrine of res judicata following an erroneous dismissal "with prejudice" by the circuit court.

Plaintiff was employed by defendant as a secretary. She was fired in February, 1974, after work-

---

[4] We recognize that the decision in *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971), permitted maintenance of a circuit court action subsequent to an unappealed commission order of dismissal. However, that case is distinguishable from the facts in the case at bar. In *Pompey* the commission's order dismissed the action because commenced after the statute of limitations had expired. Such dismissals are not on the merits for res judicata purposes, since the running of the statute of limitations merely bars access to the forum and is not a determination of the merits of the claim. *See Malesev v Garavaglia,* 12 Mich App 282; 162 NW2d 844 (1968).

Further, where two or more forums have concurrent jurisdiction over the subject matter of a controversy, a judgment by one forum is conclusive as to all other forums with concurrent jurisdiction. *Theisen v City of Dearborn,* 5 Mich App 607; 147 NW2d 720 (1967), *remanded on other grounds,* 380 Mich 621; 158 NW2d 483 (1968).

ing 17 years for defendant. On April 23, 1974, she filed a complaint with the Michigan Civil Rights Commission (CRC), alleging that she had been unlawfully discharged because of her age and sex. Plaintiff was 58 years old at the time of her discharge. Three days after filing with the CRC, on April 26, 1974, plaintiff filed a complaint in circuit court in which she alleged that the discharge was arbitrary, capricious, and without cause. She asserted two theories of recovery: (1) breach of implied contract, and (2) unlawful discharge on the basis of age in violation of the Michigan State Fair Employment Practices Act (FEPA), MCLA 423.301 *et seq;* MSA 17.458(1) *et seq.*[1]

In response to plaintiff's complaint defendant filed a motion for summary judgment. GCR 1963, 117.2(1) and 117.2(3). The asserted basis for defendant's motion was that plaintiff had failed to exhaust her administrative remedies. The circuit court agreed with defendant's position, and issued an opinion stating in part, "Plaintiff must first exhaust her administrative remedies before seeking redress in circuit court". On the basis of this finding the court dismissed plaintiff's complaint by order dated February 21, 1975. The order specified that the complaint was dismissed "with prejudice", and was signed by both parties' attorneys below the words, "Approved as to content and form".

Plaintiff did not appeal from the February, 1975, circuit court dismissal, but instead awaited the CRC's decision on whether to issue a charge. On May 14, 1975, the CRC decided not to issue a charge and dismissed plaintiff's petition on the basis of insufficient evidence. Plaintiff did not seek a reconsideration of this determination by the

---

[1] Repealed by 1976 PA 453, § 804. The provisions of the FEPA have been incorporated into the new Michigan Civil Rights Act, MCLA 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* effective March 31, 1977.

administrative agency, nor did she seek circuit court review of the agency's dismissal.

On September 17, 1975, plaintiff filed a second action in the circuit court, based on her discharge from defendant's employ and alleging age discrimination and breach of implied contract. Plaintiff asserted that the court now had jurisdiction because plaintiff had exhausted her administrative remedies as the court had instructed her to do. Defendant responded with a motion for accelerated judgment, on the grounds that (1) plaintiff had failed to exhaust her administrative remedies, because she had failed to seek reconsideration by the CRC and/or to appeal to circuit court, and (2) plaintiff's suit was barred by the doctrine of res judicata. Again the circuit court agreed with defendant, and on November 15, 1976, entered an order dismissing the second complaint on both of the above grounds. It is from this second dismissal that plaintiff appeals as of right. I would reverse.

## I—Concurrent Jurisdiction of Civil Rights Commission and Circuit Court

Plaintiff's first contention is that the circuit court erred in dismissing her first complaint. I agree. The right to obtain and retain employment without discrimination on the basis of age is a civil right. MCLA 423.301; MSA 17.458(1);[2] *Holmes v Haughton Elevator Co,* 75 Mich App 198, 200; 255

---

[2] Now MCLA 37.2102; MSA 3.548(102). The Michigan Civil Rights Act specifically allows a civil action in circuit court for violation of its provisions. MCLA 37.2801; MSA 3.548(801). It also provides in MCLA 37.2803; MSA 3.548(803), "This act shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state." The Court in *Pompey v General Motors Corporation, infra,* based its decision largely on a similar provision in Const 1963, art 5, § 29. Both the FEPA and the Michigan Civil Rights Act forbid discrimination on the basis of age.

NW2d 6 (1977). In *Pompey v General Motors Corporation,* 385 Mich 537, 559–560; 189 NW2d 243 (1971), the Court held that statutory civil rights are enforceable concurrently in the Civil Rights Commission and the circuit court. The *Pompey* Court stated as follows:

"Since *Bolden [Bolden v Grand Rapids Operating Corp,* 239 Mich 318; 214 NW 241; 53 ALR 183 (1927)] and *St. John [St John v General Motors Corp,* 308 Mich 333; 13 NW2d 840 (1944)] clearly affirm the existence of a cause of action for damages under a civil rights statute, and since the judicial remedies provision in § 29 of Article 5 clearly intended no *displacement* of judicial remedies, defendant's argument as to the 'exclusive' jurisdiction of the Civil Rights Commission is without merit.

"We hold that plaintiff can maintain a civil damage action for redress of his statutorily created right to be free from discrimination in private employment, and that this remedy may be pursued in addition to the remedial machinery provided by statute." (Footnote omitted.)

*Pompey* dealt with race discrimination; this Court in *Holmes, supra,* held that that decision by its terms also applied to age discrimination.

In dismissing plaintiff's first suit, the trial court relied upon *Michigan Civil Rights Commission v Clark,* 390 Mich 717; 212 NW2d 912 (1973), for the proposition that plaintiff was required to exhaust her administrative remedies before filing a complaint in circuit court. *Clark* provides no support for this proposition. *Clark* dealt with the question of whether a person against whom a complaint has been lodged by the CRC may, by seeking a judicial remedy, oust the CRC from consideration of a complaint against him. In the case at bar the question is whether or not a plaintiff asserting a

violation of a statutory civil right, such as the right to be free from age discrimination, is entitled to seek concurrently administrative and judicial relief. This question was answered in the affirmative by the Supreme Court in *Pompey, supra.* It is of no consequence that plaintiff had already filed with the Civil Rights Commission at the time she began her circuit court action. Plaintiff was entitled to seek redress for the alleged discrimination in the Civil Rights Commission alone, in the circuit court alone, or in both forums at the same time or in whatever order plaintiff chose. This was the clear holding in *Pompey, supra,* and for this reason the circuit court erred in dismissing plaintiff's first complaint.

## II—RES JUDICATA

Plaintiff did not appeal from the first circuit court dismissal. Instead, she waited until the CRC decided not to issue a charge, and then returned to the circuit court saying she had exhausted her administrative remedies. The circuit court again dismissed, this time on the basis of res judicata as well as failure to exhaust administrative remedies. On appeal plaintiff urges that this dismissal was also erroneous, and I would agree.

### A. *General Principles of Res Judicata*

The policy considerations behind the rule of res judicata are well known. In *Johnson v Haley,* 357 Mich 411, 418; 98 NW2d 555 (1959), our Supreme Court quoted as follows from *Baldwin v Iowa State Traveling Men's Association,* 283 US 522, 525; 51 S Ct 517; 75 L Ed 1244 (1931):

" 'Public policy dictates that there be an end of

litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' "

By application of the doctrine of res judicata the courts seek to avoid the time and expense of repetitive litigation and the problem of inconsistent verdicts on the same cause of action. See *Rose v Rose,* 10 Mich App 233, 236; 157 NW2d 16 (1968). In order for a former judgment to be a bar, three requirements must be satisfied: (1) identity of subject matter, (2) identity of parties or their privies, and (3) a judgment on the merits. *Tucker v Rohrback,* 13 Mich 73, 75 (1864); *Curry v Detroit,* 394 Mich 327, 331; 231 NW2d 57 (1975).

In the present case it is undisputed that the parties and the subject matter are the same. What is disputed is whether the original dismissal was, or should be given the effect of, a judgment "on the merits". I would answer this difficult and many-faceted question in the negative.

### B. *Dismissals not for "Lack of Jurisdiction"*

GCR 1963, 504.2 provides in pertinent part:

"For failure of the plaintiff to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

\*   \*   \*

"*Unless the court in its order for dismissal otherwise specifies,* a dismissal under this subdivision and *any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.*" (Emphasis added.)

The type of dismissal provided for in this subrule, *i.e.,* any involuntary dismissal not for lack of

jurisdiction, where the court fails to specify that
the dismissal is without prejudice, is given res
judicata effect. *Rose v Rose, supra; Irwin v Via,* 2
Mich App 375, 378; 139 NW2d 893 (1966); *Dalton v
Mertz,* 197 Mich 390, 394; 163 NW 912 (1917). The
Authors' Comments to Rule 504 point out this res
judicata effect:

> "In general, a voluntary dismissal under sub-rule
> 504.1, is without prejudice, and thus does not prohibit
> subsequent prosecution of the same action, unless the
> order of dismissal specifically states that it is with
> prejudice. Conversely, *an involuntary dismissal under
> sub-rule 504.2 operates as an adjudication on the merits
> —that is, with prejudice—thereby proscribing subse-
> quent prosecution of the same claim, unless the order of
> dismissal specifies otherwise."* 2 Honigman and Haw-
> kins, Michigan Court Rules Annotated, Authors' Com-
> ments, Rule 504, p 333. (Emphasis added.)

Thus, in the case of an involuntary dismissal
which is not for lack of jurisdiction, the plaintiff is
barred from bringing a second action unless the
order of dismissal specifies that the dismissal is
"without prejudice". However, the corollary of the
rule that any dismissal other than a dismissal for
lack of jurisdiction operates as an adjudication on
the merits is that a dismissal for lack of jurisdic-
tion *does not* operate as an adjudication on the
merits. Such a dismissal is by its nature "without
prejudice". Indeed, in construing a virtually identi-
cal provision in FR Civ P, 41(b), the Federal courts
have so held. In *Miller v Saxbe,* 396 F Supp 1260,
1261 (DDC, 1975), the first suit was dismissed for
lack of "subject matter jurisdiction" because plain-
tiff had failed to comply with a 30-day filing re-
quirement of the Equal Employment Opportunity
Act. The court stated that res judicata was inappli-
cable:

"Such a dismissal on jurisdictional grounds is not 'on the merits' for res judicata purposes and consequently is 'without prejudice' to a subsequent action raising the same or similar underlying facts if different grounds for jurisdiction are claimed. *See* F.R.Civ.P. Rule 41(b); 1B J. Moore, *Federal Practice* (2d ed. 1974) ¶ 0.405[5] at 659–61 and n. 15–19; 5 *id.* ¶ 41.14[1] at 1173–74 * * * ."

Also stating that according to FR Civ P, 41(b) a dismissal for lack of jurisdiction did not operate as a dismissal on the merits were the Federal courts in *Williams v Minnesota Mining & Manufacturing Co,* 14 FRD 1, 8 (SD Cal, 1953), and *Loucke v United States,* 21 FRD 305, 309 (SD NY, 1957). Therefore, if in the present case the first dismissal was for "lack of jurisdiction", it need not necessarily be given res judicata effect.

### C. *"Lack of Jurisdiction":* Failure to Exhaust Administrative Remedies

The question here, of course, is whether the first dismissal on the basis of failure to exhaust administrative remedies was a "dismissal for lack of jurisdiction", within the meaning of Rule 504.2. I would answer this question in the affirmative. The Federal courts construe "lack of jurisdiction" dismissals broadly, so as to include most of the situations which in Michigan are grounds for accelerated judgment.[3] See *Sharp v Two Point Associates, Ltd,* 78 Mich App 180, 188; 259 NW2d 416 (1977). In *Costello v United States,* 365 US 265, 285; 81 S Ct 534; 5 L Ed 2d 551 (1961), the Supreme Court discussed the Rule 41(b) lack of jurisdiction exception as follows:

---

[3] Accelerated judgment, not summary judgment, is the proper ground for disposing of a case on the basis of failure to exhaust administrative remedies. *See Baker v Detroit,* 73 Mich App 67, 71; 250 NW2d 543 (1976).

"We think that petitioner misconceives the scope of this exception from the dismissals under Rule 41(b) which operate as adjudications on the merits unless the court specifies otherwise. It is too narrow a reading of the exception to relate the concept of jurisdiction embodied there to the fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter. We regard the exception as encompassing those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim. Failure to file the affidavit of good cause in a denaturalization proceeding falls within this category."

The *Costello* Court went on to read "lack of jurisdiction" to mean any ground which did not go to the merits of the lawsuit, in accord with common law principles of res judicata.

In the case at bar, defendant argues that *Costello* applies only to nonspecifying dismissals, *i.e.,* those in which the lower court has not specified whether the dismissal is with or without prejudice, as was the case in *Costello.* The Court in *Weissinger v United States,* 423 F2d 795, 799 (CA 5, 1970), so read *Costello.* However, I do not agree that *Costello* must necessarily be so limited, and would choose not to so limit it here. In the first place, the *Weissinger* Court stated that the "with prejudice" order which it was considering was "entered after full trial on all issues and with complete findings and conclusions". 423 F2d at 800. This is clearly not the situation in the present lawsuit, where defendant moved for summary judgment in the first suit, and never defended on the merits. Secondly, the *Costello* language itself belies defendant's construction. In *Costello,* the Court specified that it spoke to "the scope of this

exception from the dismissals under Rule 41(b)
which operate as adjudications on the merits un-
less the court specifies otherwise." When this lan-
guage is read together with that in Rule 41(b) (or
GCR 1963, 504.2), it is clear that what the lack of
jurisdiction exception refers to is *all* involuntary
dismissals which do not specify that they are
"without prejudice". The dismissal in the case at
bar, on the basis of failure to exhaust administra-
tive remedies, was obviously not on the merits of
the age discrimination and breach of implied con-
tract claims, and was indeed based on plaintiff's
"failure to comply with a precondition requisite to
the Court's going forward to determine the merits
of [her] substantive claim". *Costello, supra,* 285.
Thus, it was a dismissal for "lack of jurisdiction"
within the meaning of GCR 1963, 504.2.

Also in support of this conclusion is the lan-
guage from Michigan cases dealing with exhaus-
tion of remedies. The Administrative Procedures
Act (APA), MCLA 24.301; MSA 3.560(201), pro-
vides that when a person has exhausted his admin-
istrative remedies and is aggrieved by a final
decision in a contested case, the decision is subject
to direct review in the courts. Michigan Courts
have construed this provision as meaning that the
circuit court lacks subject matter jurisdiction until
a person has exhausted his or her administrative
remedies:

" * * * the statute [MCLA 24.301; MSA 3.560(201)]
makes it clear that the circuit court's subject matter
jurisdiction in this case depends upon exhaustion of
administrative remedies." *International Business Ma-
chines Corp v Department of Treasury,* 75 Mich App
604, 609; 255 NW2d 702 (1977).

"We conclude that plaintiff National Bank had an
adequate administrative remedy in this case and that

therefore, the circuit court lacked jurisdiction." *Farmers State Bank of Concord v Department of Commerce, Financial Institutions Bureau,* 77 Mich App 313, 322; 258 NW2d 496 (1977).

See also, *St Paul Fire & Marine Insurance Co v Littky,* 60 Mich App 375, 378; 230 NW2d 440 (1975); *Hooper v United States,* 326 F2d 982, 984–985 (Ct Cl, 1964), *cert den,* 377 US 977; 84 S Ct 1882; 12 L Ed 2d 746 (1964).

Thus, under the view expressed in the above cases, failure to exhaust administrative remedies is viewed as so serious that the court is deprived of subject matter jurisdiction. For this reason I do not hesitate to say that failure to exhaust is at least serious enough to come within the "lack of jurisdiction" exception of GCR 1963, 504.2. However, that does not end the inquiry.

### D. *Res Judicata Effect: Jurisdictional Rulings on Jurisdictional Issue Decided*

Even though a judgment made on the grounds that the court lacks jurisdiction is not on the merits and is not conclusive as to the merits, it *is* conclusive as to what it did actually decide, *i.e.,* the jurisdictional question presented. Restatement, Judgments, § 49, p 195. In *Citizen's Mortgage Corp v Second Avenue Limited Dividend Housing Association,* 72 Mich App 1, 4; 248 NW2d 699 (1976), this Court quoted as follows from the Restatement, *supra:*

" 'b. *Effect of judgment as to issues decided.* Although, where the judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action.' "

This rule has been applied in many cases to rulings on jurisdiction. Some courts term its effect res judicata, *Ripperger v A C Allyn & Co,* 113 F2d 332 (CA 2, 1940), *cert den,* 311 US 695; 61 S Ct 136; 85 L Ed 450 (1940); *Loucke v United States, supra,* while others state that the first dismissal is conclusive as a direct estoppel on jurisdictional issues actually decided, *Miller v Saxbe, supra.* Whatever theory is used, the result is the same: the party may not relitigate the jurisdictional issue already litigated and decided in the first lawsuit. *Barzin v Selective Service Local Board No. 14,* 446 F2d 1382, 1383 (CA 3, 1971); *Acree v Air Line Pilots Association,* 390 F2d 199, 203 (CA 5, 1968); *Davis v Saab-Scania of America, Inc,* 133 Vt 317; 339 A2d 456 (1975).

In the conflict of laws area, Michigan cases also hold that the erroneous decision of a court that it has jurisdiction is res judicata. *McDonald v McDonald,* 74 Mich App 119, 123, fn 2; 253 NW2d 678 (1977); *Johnson v Haley, supra,* p 416. But what happens when the court which actually has jurisdiction erroneously decides that it lacks jurisdiction? This question is answered in Anno: *Res judicata effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue,* 49 ALR2d 1036, 1039:

"Since a judgment based on lack of jurisdiction of the court over the subject matter or over the defendant or on improper venue is not on the merits, it is obvious that such a judgment does not extinguish the cause of action and does not bar the plaintiff from maintaining another action on the same cause in a court having jurisdiction or in the proper district or county. Where a judgment dismissing an action for lack of jurisdiction is erroneous in that the court, in fact, had jurisdiction, the authorities are divided as to whether the judgment bars the plaintiff from maintaining a second action in an

appropriate forum. The better view seems to be that, if another appropriate forum is available,[20] the former judgment does not preclude the plaintiff from maintaining an action in that forum.

\* \* \*

"[20.] Of course, *if the only available forum has denied relief for lack of jurisdiction of the subject matter, the question is res judicata, even though the judgment is erroneous*". (Emphasis added; footnotes 17–19 omitted.)

Many cases are cited to support the proposition of footnote 20 in the above annotation. These cases include *In re Quinney's Estate,* 287 Mich 329; 283 NW 599 (1939), where the Court stated at pp 338–339:

"While *a dismissal on the ground the court has no jurisdiction of the subject-matter is a conclusive determination of want of jurisdiction,* it is no adjudication of the merits and will not bar another action for the same cause. 34 C.J. p 795." (Emphasis added.)

The *Quinney* Court went on to decide that, despite the rule set forth therein, the probate court's erroneous ruling that it did not have jurisdiction did not bar the plaintiff from bringing another action in the probate court. I would find that the circumstances in the case at bar are peculiar enough to require a similar holding on our part.

### E. *Administrative Remedies Exhausted: A Different Jurisdictional Question*

The rule that res judicata applies to questions of jurisdiction is inapplicable in several situations. One such situation is where the precise jurisdictional question is different in the second lawsuit than it was in the first. Annot., 49 ALR2d 1036, § 6(b). In *United States v Reid,* 104 F Supp 260,

263 (ED Ark, 1952), for example, the Court held
that its first dismissal based on invalid service of
process was not res judicata on the question of its
jurisdiction in the second action, where there *was*
valid service on the defendant:

"With respect to res judicata it is to be pointed out
that our order of April 4, 1951 merely quashed the
original service on the defendant, which was admittedly
invalid; we passed on nothing except the validity of that
particular service, and, as indicated, the Government is
now relying upon an entirely different service; our
holding that the original service was invalid is in no
sense res judicata of the validity of the present service
or of the jurisdiction of this Court in the present
proceeding."

See also *In re Kammerer's Estate,* 8 Wis 2d 494;
99 NW2d 841 (1959). In the case at bar this first
exception is applicable because the first dismissal
occurred when plaintiff's case was still pending in
the CRC. The jurisdictional question then was
whether the court could take cognizance of plain-
tiff's claim while plaintiff was at the same time
pursuing her administrative remedies. But when
plaintiff returned in September, 1975, and filed her
second complaint, the jurisdictional question had
changed to one of whether or not the circuit court
could entertain her claim when the CRC had
refused to issue a charge. Because these questions
are far from identical, the first determination was
not res judicata as to the second complaint.

A second related exception to the application of
res judicata is where there has been a change of
circumstances, *i.e.,* where "subsequent events oc-
cur which create a new legal situation or alter the
legal rights or relations of the litigants". Annot.,
49 ALR2d 1036, § 6(c), p 1058. In *In re Raseman
Estate,* 18 Mich App 91, 104–105; 170 NW2d 503

(1969), *lv den,* 385 Mich 780 (1971), this Court applied this exception in a case dealing with maintenance of an insane person:

"Plaintiff has asserted that the order of the probate court dated November 24, 1944, which was not appealed from is *res judicata* and therefore conclusive on this appeal. The doctrine of *res judicata* is not immutable. It reflects a policy of law which seeks to end litigation, but it is only a policy, not an absolute rule, and it need not be and has not been applied rigidly without regard to disparate factual situations. Just because the 1944 probate court order was not appealed from and the petition for modification was not filed until 1964 does not mean that unpaid arrearages are not subject to modification. Indeed, the fact that a petition for modification can be entertained at all establishes that the doctrine of *res judicata* does not apply—if the doctrine applied, no court could modify the 1944 order. The reason why it is subject to modification is the reason why it can be modified as to arrearages, because it operates *in futuro* as to facts that had not occurred when the order was entered. It is a general rule that *res judicata* applies only where there has been an adjudication on the merits. The 1944 probate court adjudication on the merits did not constitute an adjudication on the merits of the 1945 or later facts and, hence, did not operate in the nature of *res judicata* as to later facts which have never been the subject of adjudication so as to prevent modification of the 1944 order as to accrued and unpaid arrearages."

In the case at bar, as in *Raseman,* the jurisdictional facts existing when plaintiff filed her second complaint had never been litigated. Just as the statute involved in *Raseman* permitted modification and was thus antithetical to res judicata, so here the exhaustion doctrine inherently recognizes that at some future time, when plaintiff has exhausted his or her administrative remedies, the

court will have jurisdiction. The change in circumstances exception has also been applied in cases where the fact existing at the time of the second complaint but not at the time of the first was diversity of citizenship, *Ripperger v A C Allyn & Co,* 37 F Supp 373, 374 (SD NY, 1940), *aff'd,* 113 F2d 332 (CA 2, 1940); *Gilmer v Grand Rapids,* 16 F 708 (WD Mich, 1883), sufficient contacts with the forum state, *Myers Motors, Inc v Kaiser-Frazer Sales Corp,* 80 F Supp 18, 22 (D Minn, 1948), and residency, *Chiotte v Chiotte,* 279 SW2d 296, 297 (Ark, 1955). In the case at bar I would find that a change in circumstances took place between the filing of the first and second lawsuits and made the doctrine of res judicata inapplicable.

Defendant argues that plaintiff had not satisfied the trial court's precondition to the assumption of jurisdiction, because plaintiff had not really exhausted her administrative remedies. There is no support in law or logic for this position. MCLA 24.301; MSA 3.560(201), provides as follows:

*"When a person has exhausted all administrative remedies available within an agency,* and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, *the decision* or order *is subject to direct review,* by the courts as provided by law. *Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought.* A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy." (Emphasis added.)

The Civil Rights Commission rules do *not* require

filing of a motion or application for reconsideration or rehearing:

"Rule 7. (a) *A claimant may request of the commission a reconsideration of its refusal to issue a charge.* Any party may request a reconsideration of the terms of conciliation. Any such request shall be in writing, state specifically the grounds upon which it is based, and be filed within 30 days after the date of mailing of the notice of disposition of which reconsideration is requested. It shall be filed at any office of the commission by personal delivery or by registered or certified mail, return receipt requested." Administrative Code, 1970–1971 AACS, R 37.7(a), p 5351. (Emphasis added.)

"Rule 18.(a) Any party or intervener claiming to be aggrieved by *a final order* of the commission, *including without limitation a refusal to issue a charge,* may appeal to the circuit court of the state of Michigan having jurisdiction provided by law." Administrative Code, 1967 AACS, R 37.18(a), p 4084. (Emphasis added.)

Thus, if plaintiff had been required to exhaust any administrative remedies, as the circuit court told her she was, her task was complete when the commission refused to issue a charge. The circuit court could not incorporate into its decision a requirement of exhaustion that the law does not recognize. As for defendant's contention that "exhaustion of administrative remedies" includes appeal to circuit court, this is answered by the statute itself, which begins, "When a person has exhausted all administrative remedies available within an agency * * * ." I am not aware that the circuit court is within the Civil Rights Commission. Plaintiff did all that she was "required" to do, and the circuit court erred in dismissing her second complaint on grounds of res judicata and failure to exhaust administrative remedies.

Finally, as to the notation "with prejudice",

there is no magic in these words sufficient to turn this ruling—one inherently without prejudice ("Plaintiff must first exhaust her administrative remedies before seeking redress in the Circuit Court")—into one which bars forever plaintiff's cause of action. Such a result would be unjust and illogical. See *Laude v Cossins,* 334 Mich 622; 55 NW2d 123 (1952), where two "with prejudice" dismissals on grounds of lack of probate court jurisdiction were held no bar to the bringing of plaintiff's action in the appropriate forum, the circuit court. See also *Miami Super Cold Co, Inc v Giffin Industries, Inc,* 178 So 2d 604, 605 (Fla App, 1965). Presented with a "with prejudice" dismissal on a different set of facts, my decision might well be different. But in the case at bar, where plaintiff merely did what the court told her to do, where defendant was never put to the time and expense of defending against plaintiff's substantive claims, and where plaintiff's exhaustion of her administrative remedies meant that the only bar which the court saw to its assumption of jurisdiction had been removed, I would refuse to deny to plaintiff the day in court that she never had.